## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

**GARY LEBOWITZ, Individually and on Behalf of**
**All Others Similarly Situated,**

              **Plaintiff,**

              **v.**

**DOW JONES AND COMPANY, INC.**

              **Defendant**

Civil Action No.
06-CV-2198 (MGC)

-------------------------------------------------------------------

**ANDREW NEWMARK, ALLAN NEWMARK,**
**and BURT FAURE, Individually and on Behalf of**
**All Others Similarly Situated,**

              **Plaintiffs,**

              **v.**

**DOW JONES AND COMPANY, INC.**

              **Defendant**

Civil Action No.
06-CV-2992 (MGC)

-------------------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW IN
## <u>SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 1

DEFINITION OF THE CLASS ................................................................................... 3

PROCEDURAL HISTORY .......................................................................................... 3

STATEMENT OF FACTS ........................................................................................... 4

   I.   Dow Jones Offered WSJ Online and Barron's Online As A Single Subscription  Product ... 6

   II.  Dow Jones Chose Not To Disclose To WSJ.com Subscribers That It Would Launch
        Barron's Online As A Stand Alone Subscription Product .................................... 7

ARGUMENT ............................................................................................................... 9

   I.   Class Certification Of Plaintiffs' Claims Is Appropriate Here ........................... 9

   II.  The Requirements of Rule 23 Have Been Met ................................................. 11

     A.  The Requirements of Rule 23(a) Are Satisfied ......................................... 12

        1.  The Class Is Sufficiently Numerous .................................................... 12

        2.  Questions Of Law Or Fact Are Common To The Class ...................... 12

        3.  Plaintiffs' Claims Are Typical Of The Class They Seek To Represent .................... 15

        4.  Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class .............. 17

     B. The Plaintiffs Have Satisfied The Requirements Of The Federal Rules Of Civil Procedure
       Rule 23(b)(3) .......................................................................................... 17

        1.  Common Issues Predominate .............................................................. 18

           a.  Defendant's Common Deceptive Practice Predominates ...................... 18

           b.  Defendant's Uniform Material Omission Predominates ...................... 20

           c.  New York Law May Be Applied Class Wide ...................................... 21

        2.  A Class Action Is The Superior Method Of Adjudication ...................... 22

   III.   Conclusion ........................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ackerman v. Price Waterhouse*, 252 A.D.2d 179 (N.Y. App. Div. 1st Dep't 1998) ...................... 21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................9, 18

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002) ................................. 15

*Broder v. MBNA Corp.*, 281 A.D.2d 369 (N.Y. App. Div. 1st Dep't 2001)............................11, 19

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .................................................... 22

*Civic Ass'n of the Deaf v. Guiliani*, 915 F. Supp. 622 (S.D.N.Y. 1996)........................................ 15

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. N.Y. 1995) ...................... 12

*David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752 (S.D.N.Y. 1988)......................... 13

*DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005)............................. 12

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) .............................................................. 9

*Dodge v. County of Orange*, 208 F.R.D. 79 (S.D.N.Y. 2002)........................................................ 13

*Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968) .................................................................. 17

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y.1981) ...........................15, 16

*Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295 (S.D.N.Y. 1990) .................................. 10

*Friar v. Vanguard Holding Corp.* 78 A.D.2d 83 (N.Y. App. Div. 2d Dep't 1980) ............. 10, 18, 23

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce*, 903 F.2d 176, 180 (2d Cir. N.Y. 1990) . 16

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, (S.D.N.Y. 1987).......15, 16

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ....................................................................... 10

*Gross v. Ticketmaster*, 2004 NY Slip Op 51199U (N.Y. Misc. Sept. 15, 2004)........................... 14

*Guadagno v. Diamond Tours & Travel, Inc.*, 89 Misc. 2d 697 (N.Y. Sup. Ct. 1976)................... 14

*Guarantee Ins. Agency Co. v. Mid-Continental Rlty Corp.*, 57 F.R.D. 555 (N.D. Ill. 1972).......... 17

*Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981) ............................................................... 9

*In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424 (S.D.N.Y. 1986) ........................................... 21

*In re Coordinated Title Ins. Cases*, 2004 NY Slip Op 50171U (Nassau Cty. Jan. 8, 2004)......14, 21

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. N.Y. 1992) ......................15, 16

*In re Joint E. and S. Distr. Asbestos Litig.*, 78 F.3d 764 (2d Cir. N.Y. 1996) ............................... 17

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ............. 19

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001).............................. 18

*Kindel v. Kaufman & Board Homes, Inc.*, 67 A.D.2d 938 (N.Y. App. Div. 2d Dep't 1979).......... 19

*King v. Club Med, Inc.*, 76 A.D.2d 123 (N.Y. App. Div. 1st Dep't. 1980) .................................... 14

*Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y. 1995) ................................................. 13

*Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ................19, 22

*Lebowitz v. Dow Jones & Co.*, Inc., 2008 U.S. Dist. LEXIS 68212 (S.D.N.Y. Sept. 10, 2008)....... 4

*Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247 (D.N.J. 1992) ........................................... 18

*Lonner v. Simon Prop. Group, Inc.*, 2008 NY Slip Op 7877 (N.Y. App. Div. 2d Dep't 2008) ...... 13

*McAnaney v. Astoria Fin. Corp.*, 2006 U.S. Dist. LEXIS 66941 (E.D.N.Y.  Sept. 19, 2006)........ 11

*Morrissey v Nextel Partners, Inc.*, 2010 NY Slip Op 1565 (N.Y. App. Div. 3d Dep't 2010)......... 13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).................................................................. 9

*Pruitt v. Rockefeller Ctr. Properties, Inc.*,167 A.D.2d 14 (N.Y. App. Div. 1st Dep't 1991).......... 10

*Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147 (2d Cir. 2001) ................................ 12

iii

*Ross v. A.H. Robbins Co.*, 100 F.R.D. 5 (S.D.N.Y. 1982) ............................................................ 17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*130 S. Ct. 1431 (2010) ...................... 22

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (S.D.N.Y. 2004) ..................................19, 22

*Taylor v. American Bankers Ins. Group, Inc.,* 267 A.D.2d 178 (N.Y. App. Div. 1st Dep't 1999).....
............................................................................................................................... 11, 14, 19, 20

*TCW/DW North Am, Government Income Trust Sec. Litig.*, 1996 U.S. Dist. LEXIS 12509
S.D.N.Y. August 28, 1996).......................................................................................... 16

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992)............................................. 12

*Weinberg v. Hertz Corp.*, 116 A.D.2d 1 (N.Y. App. Div. 1st Dep't 1986).................................... 14

## STATUTES

Class Action Fairness Act ................................................................................................... 4

Connecticut Gen. Stat. §§ 42-110a .................................................................................3, 4

Fed. R. Civ. P. 23(a).................................................................................................passim

Fed. R. Civ. P. 23(b).................................................................................................passim

Fed. R. Civ. P. 23(c).................................................................................................passim

NY GBL §349............................................................................................................passim

## OTHER AUTHORITIES

Alba Conte and Herbert B. Newberg, *Newberg on Class Actions*, §5:7 (4th Ed.) ........................ 10

Herbert Newberg, 4 *Newberg on Class Actions*, 4th Ed. (1992), § 22.11 ..................................... 15

## INTRODUCTION

Plaintiffs submit this memorandum of law, along with the accompanying Declaration of Paul C. Whalen dated June 15, 2011 ("Whalen Decl."), in support of Plaintiffs' motion for an order pursuant to Federal Rules of Civil Procedure, Rules 23(a), (b)(3) and (c), certifying this action as a class action, naming Plaintiffs as Class representatives, and naming Paul C. Whalen of The Law Office of Paul C. Whalen, P.C., and Curtis Trinko and Jennifer Traystman of The Law Offices of Curtis Trinko, LLP as Class Counsel.[1]

Plaintiffs allege that they and all Class members prepaid in full for a one year subscription to WSJ.com, which included both WSJ Online and Barron's Online. During the Class Period, Dow Jones and Company, Inc. ("Dow Jones") originated or automatically renewed Plaintiffs' and the other Class members' annual subscriptions and charged their credit cards the full annual subscription fee. On January 8, 2006, prior to the expiration of Plaintiffs' and the other Class members' prepaid annual subscriptions to WSJ.com, which included Barron's Online, Dow Jones launched Barron's Online as a standalone subscription product. At this time, Dow Jones required Plaintiffs and all other prepaid annual subscribers to WSJ.com to pay Dow Jones an additional $20.00 in order to continue to receive access to Barron's Online (and/or access to WSJ Online)[2] for the remainder of their prepaid annual subscription term. In so doing,

---

[1] Plaintiffs are mindful of the Court's comments at the May 23, 2011 conference that the Class need not be represented by multiple law firms. At the hearing, counsel for Plaintiffs indicated that although there were multiple firms, each firm was small (collectively, the firms have a total of less than 10 lawyers), and the Class should have the benefit of these firms to match the resources of defense counsel who have several hundred attorneys at their disposal. Proposed Class counsel have been and will continue to be mindful to avoid duplication of work wherever possible.

[2] At the time of the spinoff, a small percentage of the Class were offered the choice to

Dow Jones failed to provide Plaintiffs and the other members of the Class with what they already had paid for in full: one year of online access to both WSJ Online and Barron's Online ("Dual Access").  Although defendant knew long before January 8, 2006, that it would cease to include Barron's Online as part of the WSJ.com subscription, or *vice versa*, it failed to inform WSJ.com subscribers of this fact until January 8, 2006.

Defendant breached its uniform contract with Plaintiffs and the other members of the Class by failing to provide Dual Access during the entire prepaid subscription period.  Defendant also violated NY GBL §349 with respect to Plaintiffs and the Class by (1) failing to provide Dual Access after Plaintiffs and the other members of the class had prepaid for that access for one full year's term; and (2) failing to disclose to Plaintiffs and the other members of the Class at the time they subscribed and/or when defendant automatically renewed their subscriptions that it intended to launch Barron's Online as a standalone subscription in January 2006, and charge an additional $20.00 for continued Dual Access for the duration of their prepaid subscription period.[3]

This case is ideally suited for class certification as there are three common and predominant questions that apply to all members of the class:

(1) Did Dow Jones breach its uniform subscriber agreement with members of the Class by

---

continue access to either WSJ Online or Barron's Online. Those that elected access to Barron's Online lost access to WSJ Online.

[3] The damages of Plaintiffs and the Class are based on the annual subscription payment made before they had any knowledge of the Barron's Online spinoff. Throughout this litigation, Dow Jones has sought to invoke the voluntary payment doctrine. While one could argue that the voluntary payment doctrine may bear on the $20.00 charge (prorated by Dow Jones depending on how many months the class member had left in the annual subscription) to continue Dual Access, that doctrine has no relevance to the original annual subscription payment that was paid by all class members (and some Plaintiffs) prior to any disclosure of the Barron's Online spinoff or defendant's offer to class members to avoid the detrimental effects of the Barron's Online spinoff by paying an additional $20.00 (prorated).

discontinuing Dual Access in January 2006?

(2) Did Dow Jones violate GBL §349 by failing to disclose to class members at the time of their subscription or renewal that it would spinoff Barron's Online before the end of the class member's annual subscription period?

(3) Did Dow Jones violate GBL §349 by failing to provide Dual Access for the duration of class members' annual subscription period?

## DEFINITION OF THE CLASS

Plaintiffs seek to represent a Class comprised of all consumers with pre-paid annual subscriptions to the *Wall Street Journal Online* (www.WSJ.com) (hereinafter "WSJ.com"), which were either originated or automatically renewed by Dow Jones during the period January 8, 2005 through and including January 7, 2006 ("the Class Period")("the Class"). Excluded from the Class are Journal in Education, Factiva and Corporate and Group subscribers to WSJ.com.

## PROCEDURAL HISTORY

On June 1, 2006, Plaintiffs Gary Lebowitz, Burt Faure, Allan Newmark and Andrew Newmark filed the First Consolidated Amended Class Action Complaint, alleging claims for breach of contract, unjust enrichment and violation of NY GBL §349 on behalf of themselves and the Class, as well as the violation of Connecticut Gen. Stat. §§ 42-110a on behalf of Class members residing in Connecticut.

From June through December 2006, defendant moved three separate times to dismiss all of Plaintiffs' consolidated claims. Each time, Plaintiffs were granted leave to re-plead. On

December 12, 2006, defendant moved to dismiss the Third Consolidated Amended Class Action Complaint and to strike Plaintiffs' class allegations.  This motion was fully briefed, and on January 18, 2007, oral argument was heard.  The court granted, in part, defendant's motion to dismiss the Third Consolidated Amended Class Action Complaint as to Plaintiffs' claims for unjust enrichment and violation of Connecticut Gen. Stat. §§ 42-110a, denied defendant's motion to strike, and granted Plaintiffs' leave to amend their claims for breach of contract and violation of NY GBL §349.

On February 9, 2007, Plaintiffs filed the Fourth Consolidated Amended Class Action Complaint, alleging claims for breach of contract and violation of NY GBL §349 on behalf of themselves and the Class.  Defendant did not move to dismiss the Fourth Consolidated Amended Class Action Complaint.  On March 22, 2007, defendant filed its Answer to the Fourth Consolidated Amended Class Action Complaint.

On September 28, 2007, Plaintiffs originally moved for class certification. The Court thereafter denied the motion without prejudice on September 10, 2008 pending its determination as to whether it had subject matter jurisdiction under the Class Action Fairness Act.  *Lebowitz v. Dow Jones & Co., Inc.*, 2008 U.S. Dist. LEXIS 68212 (S.D.N.Y. Sept. 10, 2008).

On May 23, 2011, the Court ruled that it had subject matter jurisdiction based on its finding that all members of the putative Class could bring a claim under GBL §349 and seek statutory damages.

## STATEMENT OF FACTS

Both WSJ Online and Barron's Online are electronic publications owned and operated by

defendant Dow Jones.  Cplt. ¶ 3.[4]  Defendant admits that at all times prior to January 8, 2006,

Barron's Online was part of, and included with, a subscription to WSJ Online.  Joint Stipulation

of Undisputed Facts Concerning Subject Matter Jurisdiction ("Joint Stip.")  ¶¶ 1 and 3, Attached

as Exhibit 1 to the Whalen Decl.; Whalen Decl. Exhibit 2 ("The Wall Street Journal Online and

Barron's Online have always been offered together to customers as one product in one price.

When subscribers purchase The Wall Street Journal Online, they would automatically have

content access to both."); Deposition Transcript of Kelly Leach, September 21, 2007 ("Leach

Tr."), attached as Exhibit 3 to the Whalen Decl.,  at 11: 24-25; 12:1-21; 16:22-25; 17:1-3. ("Q.

Beginning from when you joined the company in 2003 up through I will call it the relaunch in

2006, did subscribers of the Wall Street Journal Online have access to content in the Barron's

magazine online? . . .  A. Yes."); Deposition Transcript of Jane Ouano dated September 21, 2007

("Ouano Tr."), attached as Exhibit 4 to the Whalen Decl., at 17:12 ("A. In January of 2006, we

separated the feature of Barron's online from the Wall Street Journal online and began to market

it as a separate product.").

     During the Class Period, Plaintiffs and the other members of the Class either originated

an annual subscription to WSJ Online, which included Barron's Online, or had their annual

subscriptions renewed automatically by Dow Jones.  Cplt. ¶¶ 2, 8-11.  In each instance, Dow

Jones charged Plaintiffs' and the other Class members' credit cards in advance for a full year's

subscription to WSJ Online.  *Id*.; ¶¶ 23- 24.  Each subscription to WSJ Online which was

originated or renewed prior to January 8, 2006, included Barron's Online.  Whalen Decl. Exhibit

1 ¶¶ 1 and 3; Leach Tr., attached as Exhibit 3 to the Whalen Decl., at 11: 24-25; 12:1-21; 16:22-

25; 17:1-3; Ouano Tr., attached as Exhibit 4 to the Whalen Decl., at 17:12-15.

---

[4]  All parenthetical references ("Cplt. ¶") herein are to Plaintiffs' Fourth Consolidated
Amended Class Action Complaint.

On January 8, 2006, Dow Jones launched Barron's Online as a stand-alone subscription product.  Whalen Decl. Exhibit 1 at ¶2.  Rather than honor its agreements with Plaintiffs and the other Class members by continuing Dual Access for the duration of their prepaid subscription term, Dow Jones required Plaintiffs and the other WSJ.com annual subscribers to pay an additional $20.00 at this time for continued access to both online publications. Cplt. ¶ 4. Absent payment of the additional $20.00 mid-subscription, Dow Jones denied Plaintiffs and the other Class members Dual Access for the remainder of their prepaid annual subscription term. Cplt. ¶¶ 4; 8-11; 44; Leach Tr., attached as Exhibit 3 to the Whalen Decl., at 15: 4-13.

**I.     Dow Jones Offered WSJ Online and Barron's Online As A Single Subscription Product**

There is no dispute that prior to January 8, 2006, every annual subscription to WSJ.com included both WSJ Online and Barron's Online.  Plaintiffs and all other members of the Class entered into the same contract with Dow Jones:  an annual subscription to WSJ.com, which included both WSJ Online and Barron's Online, for a prepaid annual fee.  Indeed, as defendant admits, prior to January 8, 2006, it was not possible to subscribe solely to WSJ Online without also receiving Barron's Online. Leach Tr., attached as Exhibit 3 to the Whalen Decl., at 11:10-13; 12:5-8 ("What we refer to as Barron's Online prior to January 2006 existed . . . within the Wall Street Journal Online. . . . Q: Who had access to the Barron's Online content in that time frame?  A: Anybody that was a subscriber to the Wall Street Journal Online.").

At all times prior to January 8, 2006, the end of the Class Period, Dow Jones gave "almost one hundred percent" of its annual subscribers to WSJ Online a free trial period prior to commencing their original annual subscription term. Ouano Tr., attached as Exhibit 4 to the Whalen Decl., at 44: 9-15 ("Q: Do you know what percentage of customers come through an

offer that provides for a trial subscription?" . . . The Witness: Almost one hundred percent."). This trial subscription included access to Barron's Online. Ouano Trans., attached as Exhibit 4 to the Whalen Decl., at 45:12-23.  At the end of the two week trial period, Dow Jones' charged subscribers' credit cards for the full one year subscription. *Id*. at 44:20-25; 1-7.  Pursuant to defendant's uniform subscriber agreements, defendant would automatically charge Plaintiffs and other Class members' credit cards to renew their annual subscriptions each year until a subscription was cancelled.

All versions of the standard form Dow Jones Subscriber Agreement for WSJ.com, including the version dated December 19, 2005 (mere weeks prior to the launch of Barron's Online as a standalone subscription product), unequivocally governed subscribers use of both WSJ Online and Barron's Online.  *See* Whalen Decl. Exhibit 6, DJ 00001-16.  None informed subscribers of the relaunch of Barron's Online as a standalone subscription product.

## II.    Dow Jones Chose Not To Disclose To WSJ.com Subscribers That It Would Launch Barron's Online As A Stand Alone Subscription Product

Dow Jones had been planning for years to spinoff Barron's Online prior to doing so.  *See* Deposition Transcript of Todd Larsen dated September 19, 2007 attached as Exhibit 7 to the Whalen Decl.. Indeed, by no later than April 2005, Dow Jones had made this determination. Ouano Tr., attached as Exhibit 4 to the Whalen Decl., at 18:8-10 ("Q.  And as of March or April 2005, had a decision to spinoff Barron's been made? A.  March/April 2005, yes.").

Despite its advanced knowledge, Dow Jones admits that it only informed WSJ.com subscribers of the Barron's Online spinoff on January 8, 2006, the day that it occurred.  *See* Dow Jones Supplemental Responses and Objections To Plaintiffs' First Set Of Interrogatories, Response and Objections to Interrogatory No. 3, attached as Exhibit 8 to the Whalen Decl..

Indeed, renewal notices to WSJ.com subscribers dated October 2005 and December 2005 failed to notify subscribers of the pending launch of Barron's Online as a standalone subscription product on January 8, 2006.  *See* DJ 00318-319, attached as Exhibit 9 to the Whalen Decl..  Dow Jones also failed to inform Plaintiffs and the other WSJ.com subscribers who renewed or originated their annual subscriptions during the Class Period that they would be required to pay more money mid-subscription in order to maintain full access to both WSJ Online and Barron's Online for the duration of their prepaid subscription term.  *Id.*

Dow Jones' failure to inform WSJ Online subscribers that it would eliminate their access to Barron's Online, and Barron's Online subscribers of their loss of WSJ Online when Barron's Online was launched as a separate product on January 8, 2006, is especially egregious in light of Dow Jones' Subscription Agreements for WSJ.com, which states that (1) Dow Jones bills subscription fees only upon origination or renewal, not mid-subscription, and (2) Dow Jones does not refund subscription fees.  *See, e.g.*, DJ 00001 at ¶ 4, attached as Exhibit 6 to the Whalen Decl..  The launch of Barron's Online as a standalone product on January 8, 2006, and the concurrent increase in the WSJ.com subscription fees for those who wished to maintain access to both WSJ Online and Barron's Online, ran afoul of Dow Jones' common practice of rolling out changes in subscription prices over a one year period so that (1) any change in price would coincide with individual subscription renewals, and (2) the individual subscribers would be notified in advance.  Leach Tr., attached as Exhibit 3 to the Whalen Decl., at. 54: 7-25; 55: 9-18 (deponent testifying as to customary practice of subscription price increases for WSJ.com: "we would institute the price increase and it gets rolled out over a 12- month period when somebody – the next time somebody is going to pay us for their next year of service with their subscription to WSJ.com.").

As a result of Dow Jones' acts and omissions, Plaintiffs and the other members of the Class did not get what they paid for - a full year's worth of prepaid access to both WSJ Online and Barron's Online.  Nor did they receive refunds from Dow Jones to compensate them for their loss of prepaid Dual Access.[5]  ¶ 76.

## ARGUMENT

### I.      Class Certification of Plaintiffs' Claims Is Appropriate Here

Class action status is especially appropriate in the instant action, which involves allegations of Dow Jones' common deception of more than 500,000 consumers.  Whalen Decl. Exhibit 1 at ¶21.  Dow Jones has caused relatively small losses per each individual consumer, but has wrongfully profited in the millions of dollars at the Class members' collective expense.

The U.S. Supreme Court repeatedly has stressed the importance of class action litigation where, as here, the individual consumer suffers relatively small injuries at the hands of powerful business entities.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689, 709 (1997) (internal citation omitted).  In such a case, aggregation provides an incentive to litigate claims which economically could not be brought on an individual basis.  *Id.*; *accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 2973, 86 L. Ed. 2d 628, 640 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.  For example, this lawsuit involves claims averaging about $100.00 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available."); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S. Ct. 2193, 2199, 68 L. Ed.

---

[5] Dow Jones has represented that 449 subscribers, a tiny fraction of the Class, received a monetary credit or were allowed to continue access to Barron's Online (and/or access to WSJ Online). Whalen Decl. Exhibit 1 at ¶¶ 30-31.

2d 693, 702 (1981) ("Class actions serve an important function in our system of civil justice.");

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct. 1166, 1174, 63 L. Ed. 2d

427, 440 (1980) ("Where it is not economically feasible to obtain relief within the traditional

framework of a multiplicity of small individual suits for damages, aggrieved persons may be

without any effective redress unless they may employ the class-action device."). *See also* Alba

Conte and Herbert B. Newberg, *Newberg on Class Actions*, §5:7 (4th Ed.) (hereafter "Newberg")

("A class action may represent the only means for judicial relief when a plaintiff's claim is too

small economically to support individual litigation.").

 As this Court has held, "[o]ne of the purposes of a class action is to make litigation

possible in situations where a large number of persons have been injured, 'although no one

person [has] been damaged to a degree which would have induced him to institute litigation

solely on his own behalf.'" *Epifano v. Boardroom Bus. Prods., Inc*., 130 F.R.D. 295, 299

(S.D.N.Y. 1990)(MGC), citing to *Green  v. Wolf Corp*., 406 F.2d 291, 296 (2d Cir. 1968).  Class

action status is especially appropriate where, as here, the common acts of a single public

corporation have harmed numerous consumers:

> 'The class action is seen as a means of inducing socially and ethically responsible
> behavior on the part of large and wealthy institutions which will be deterred from
> carrying out policies or engaging in activities harmful to large numbers of
> individuals.' Without the benefit of the class action, these institutions could act
> with impunity in such matters.

*Pruitt v. Rockefeller Ctr. Properties, Inc.*,167 A.D.2d 14, 23, 574 N.Y.S.2d 672, 677 (N.Y. App.

Div. 1st Dep't 1991), *quoting Friar v. Vanguard Holding Corp.* 78 A.D.2d 83, 90, 434 N.Y.S.2d

698, 706 (N.Y. App. Div. 2d Dep't 1980).

 Here, Plaintiffs' allegations are based on Dow Jones' (1) breach of a uniform contract to

provide prepaid annual subscriptions to WSJ.com with access to both WSJ Online and Barron's

Online; (2) failure to inform subscribers upon subscription origination or renewal during the

Class Period that it would not provide (and did not provide) both online publications for the

duration of the prepaid annual subscription term; and (3) failure to deliver the services that

Plaintiffs and the members of the Class pre-paid for.  These are precisely the type of allegations

based on defendant's uniform conduct which should be certified on a class wide basis. *See*

*Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (N.Y. App. Div. 1st Dep't

2001) (granting class certification for breach of contract and NY GBL §349 based on defendant's

common deceptive sales practices); *Taylor v. American Bankers Ins. Group, Inc.,* 267 A.D.2d

178, 700 N.Y.S.2d 458 (N.Y. App. Div. 1st Dep't 1999) (same); *McAnaney v. Astoria Fin.

Corp.*, 2006 U.S. Dist. LEXIS 66941 (E.D.N.Y.  Sept. 19, 2006) (certifying Rule 23 (b)(2) and

(b)(3) state consumer protection claims based on defendant's uniform deceptive practices in

charging for services not provided).

**II.    The Requirements of Rule 23 Have Been Met**

The prerequisites for class certification are set forth in Rules 23(a) and (b) of the Federal

Rules of Civil Procedure.  Rule 23(a) provides that the action must meet each of the following

criteria:

1.    the class must be so numerous that joinder of all members is impractical;

2.    there must be questions of law and fact common to the class;

3.    the claims or defenses of the representative parties must be typical of the claims
and defenses of the class; and

4.    the representative parties must fairly and adequately protect the interests of the
class.

Second, in a class action suit for damages, such as the instant action, the requirements of

Rule 23(b)(3) must also be met.  Rule 23(b)(3) permits a class action to be maintained if, in

addition to satisfying Rule 23(a):

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or the defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Each of the requirements of Rule 23(a) and (b)(3) has been met in this action.

## A.    The Requirements of Rule 23(a) Are Satisfied

### 1.    The Class Is Sufficiently Numerous

There are in excess of 500,000 members of the Class geographically dispersed throughout the United States whose identities can be ascertained from the records and files of Defendant.   Whalen Decl. Exhibit 1 at ¶21.  Courts routinely find the numerosity requirement of Rule 23(a)(1) satisfied with as few as forty (40) potential members in the proposed class. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. N.Y. 1995) ("numerosity is presumed at a level of 40 members."), *cert denied*, 515 U.S. 1122, 115 S. Ct. 2277, 132 L. Ed. 2d 281 (1995).  The numerosity requirement has been satisfied.

### 2.    Questions Of Law Or Fact Are Common To The Class

The commonality requirement of Rule 23(a)(2) is met where the plaintiffs and the other members of the proposed class share a single common question of law or fact.  *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80, 2005 U.S. Dist. LEXIS 13657, 17-19 (S.D.N.Y. 2005). Identity of all issues is not required.  *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992). As this Court has held, "Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact 'occupies

essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members of the proposed class.'" *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y. 2002) (quoting *Krueger v. New York Tel. Co.,* 163 F.R.D. 433, 442 (S.D.N.Y. 1995)).  Indeed, "[t]he key inquiry of Rule 23(a)(2) is whether the plaintiffs' claims arise from a common nucleus of facts.  Such cases are considered particularly appropriate for class action treatment." *David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 756, 1988 U.S. Dist. LEXIS 11581, 11 (S.D.N.Y. 1988).

Here, all of Plaintiffs' claims, and those of the proposed Class, arise from one common course of conduct: (1) Dow Jones offered, originated and automatically renewed prepaid annual subscriptions to WSJ.com, which included access to both WSJ Online and Barron's Online, during the Class Period;  (2) Dow Jones knew and failed to inform these subscribers that it would launch Barron's Online as a standalone subscription product on January 8, 2006, and no longer provide Dual Access as part of a WSJ.com subscription; and (3) as of January 8, 2006, Dow Jones failed to provide the prepaid annual subscribers to WSJ.com Dual Access for the complete prepaid one year subscription term.

New York courts repeatedly have acknowledged the value of the class action device in adjudicating cases such as this, alleging violations of NY GBL §349 and breach of contract based on a defendant's uniform deceptive acts and omissions.  *See Morrissey v Nextel Partners, Inc.*, 2010 NY Slip Op 1565, 72 A.D.3d 209, 895 N.Y.S.2d 580, 2010 N.Y. App. Div. LEXIS 1545 (N.Y. App. Div. 3d Dep't 2010) (certifying a class in which the plaintiff's claims arose under NY GBL § 349 because the location and typeface of the notice given regarding the change of contract made it deceptive); *Lonner v. Simon Prop. Group, Inc.*, 2008 NY Slip Op 7877, 57 A.D.3d 100, 866 N.Y.S.2d 239, 2008 N.Y. App. Div. LEXIS 7785 (N.Y. App. Div. 2d Dep't

2008) (the class claims could be maintained for breach of contract and violation of NY GBL §349 where plaintiff alleged that he should not be charged a fee for nonuse of a gift card, making the gift card less valuable, when the fee language was hidden in the cardboard covering the gift card); *In re Coordinated Title Ins. Cases*, 2004 NY Slip Op 50171U, 2004 N.Y. Misc. LEXIS 256 (Nassau Cty. Jan. 8, 2004) (certifying consumer class claims for violation of NY GBL §349 and common law fraud based on defendant's common material omission); *Gross v. Ticketmaster*, 2004 NY Slip Op 51199U, 1-4 (N.Y. Misc. Sept. 15, 2004) (certifying plaintiffs' claims for breach of contract and violation of NY GBL §349 where plaintiff alleged that she did not get what she paid for when she purchased concert tickets and defendant failed to disclose at the time of purchase that the view of the stage was obstructed and failed to provide a refund.); *Taylor v. American Bankers Ins. Group, Inc.,* 267 A.D.2d 178, 700 N.Y.S.2d 458, 1999 N.Y. App. Div. LEXIS 13408 (N.Y. App. Div. 1st Dep't 1999) (certifying class for breach of contract and violation of NY GBL §349 where plaintiff's alleged defendant engaged in the deceptive practice of offering credit insurance in a misleading manner); *Weinberg v. Hertz Corp.*, 116 A.D.2d 1, 3, 299 N.Y.S.2d 693, 695, 1986 N.Y. App. Div. LEXIS 50360, 5 (N.Y. App. Div. 1st Dep't 1986), *aff'd*, 69 N.Y.2d 979, 516 N.Y.S.2d 652, 509 N.E.2d 347 (N.Y. 1987) (certifying class claims for violation of NY GBL §349 and common law fraud based on defendant's alleged deceptive practice of charging unconscionable fees); *King v. Club Med, Inc.*, 76 A.D.2d 123, 127, 430 N.Y.S.2d 65, 67, 1980 N.Y. App. Div. LEXIS 11738, 8-9 (N.Y. App. Div. 1st Dep't. 1980) (certifying class claims for breach of contract and common law fraud based on defendant's deceptive sales of a vacation package); *Guadagno v. Diamond Tours & Travel, Inc.*, 89 Misc. 2d 697, 392 N.Y.S.2d 783 (N.Y. Sup. Ct. 1976) (court held in an action alleging "fraudulent misrepresentation and breach of contract in connection with the sale of travel tours to a Jamaican

14

resort, a motion by plaintiffs for an order determining that the action may be maintained as a class action is granted.").

The commonality requirement has been satisfied.

### 3.   Plaintiffs' Claims Are Typical Of The Class They Seek To Represent

Typicality is measured by the claims of and defenses to the named Plaintiffs.  "As long as plaintiffs assert . . . that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 154-55, 2002 U.S. Dist. LEXIS 13243, 18-21 (S.D.N.Y. 2002).

The purpose of the typicality requirement of Rule 23(a)(3) is to ensure that a representative plaintiff who advances his/her own claims through litigation will also advance the interests of the class members accordingly.  *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y. 1987); *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981);Herbert Newberg, 4 *Newberg on Class Actions*, 4th Ed. (1992), § 22.11 ("The alignment of interest is not the test for typicality; it is the result.  Plaintiff and class members have similar interests because they have similar claims.").

The claims of the named plaintiffs satisfy the typicality requirement if they "arise[ ] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. N.Y. 1992), *cert. denied*, 506 U.S. 1088 (1993).  This criterion refers to the nature of the claim or defense of the class representatives, and not to specific facts from which they arose or the relief sought.  *Civic Ass'n of the Deaf v. Guiliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996).  Moreover, the mere presence of individualized factual questions unique to the class representatives will not

bar class certification.  *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce*, 903 F.2d

176, 180 (2d Cir. N.Y. 1990); *In re TCW/DW North Am, Government Income Trust Sec. Litig.*,

1996 U.S. Dist. LEXIS 12509 at * 33 (S.D.N.Y. August 28, 1996).

  Here, the claims of the named Plaintiffs and the claims of all Class members derive

from Defendant's uniform deceptive practice of  (1) offering, originating and automatically

renewing annual prepaid subscriptions to WSJ.com, which included both WSJ Online and

Barron's Online, during the Class Period; (2) failing to inform Plaintiffs and the other WSJ.com

annual subscribers that it would launch Barron's Online as a standalone product on January 8,

2006, prior to the expiration of the prepaid annual subscription terms, and (3) cutting off the

prepaid WSJ.com annual subscribers' Dual Access as of January 8, 2006.

  The claims of Plaintiffs and those of all Class members are the same:  Plaintiffs and the

other Class members all prepaid for an annual subscription to WSJ.com during the Class Period

which, as Dow Jones admits, included both WSJ Online and Barron's Online.  Prior to

completion of their prepaid annual subscription term, Plaintiffs and each Class member were

deprived of Dual Access (for which they paid in full) and were not refunded by Dow Jones.

  Because the named Plaintiffs (a) have suffered the same injuries as members of the Class

they seek to represent (they did not receive the complete prepaid annual subscription to

WSJ.com, which included both WSJ Online and Barron's Online); (b) as a result of the same

course of conduct by Defendant; and (c) their claims are based on the same legal issues as the

claims of members of the Class they seek to represent; the named Plaintiffs' claims are typical of

those of the Class.  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291; *Dura-Bilt

Corp.*, 89 F.R.D. at 99; *Genden*, 114 F.R.D. at 52-53.

  The typicality requirement has been satisfied.

### 4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

The adequacy requirement of Rule 23(a)(4) is satisfied where (a) the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation; and (b) plaintiff's interests are not antagonistic to those of the other class members. *Ross v. A.H. Robbins Co.*, 100 F.R.D. 5, 7 (S.D.N.Y. 1982); *In re Joint E. and S. Distr. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. N.Y. 1996). Absent a showing to the contrary, adequacy may be presumed. *Dolgow v. Anderson*, 43 F.R.D. 472, 494 (E.D.N.Y. 1968); *rev'd on other grounds*, 438 F.2d 825 (2d Cir. N.Y. 1971); *Guarantee Ins. Agency Co. v. Mid-Continental Rlty Corp.*, 57 F.R.D. 555, 565-66 (N.D. Ill. 1972).

Both prongs of the Rule 23(a)(4) adequacy requirement are satisfied here. First, Plaintiffs' counsel have extensive experience in successfully prosecuting complex consumer fraud and breach of contract actions. They have participated in numerous complex class actions on behalf of consumers and are committed to the vigorous prosecution of this action.

Second, each of the named Plaintiffs has claims identical to those of the Class they seek to represent: they have been denied their complete prepaid annual subscription to WSJ.com, which, as defendant has admitted, included both WSJ Online and Barron's Online, and they have not been refunded their money.

The adequacy requirement has been satisfied.

### B.    The Plaintiffs Have Satisfied The Requirements Of The Federal Rules Of Civil Procedure Rule 23(b)(3)

### 1.   Common Issues Predominate

Once a showing is made that the prerequisites of Rule 23(a) are met, the Court must then

examine whether the action satisfies Rule 23(b)(3).

As the U.S. Supreme Court has recognized, the Rule 23(b)(3) predominance "is a test readily met" in many deceptive practices cases involving consumers. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250 (1997). In consumer actions, like the present one, the court's inquiry is focused on whether "the defendant's challenged activities stem from a single, class-wide course of conduct, so that the issue of … liability is common to the class." *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 252 (D.N.J. 1992).

Rule 23(b)(3) "calls only for predominance, not exclusivity, of common questions." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001). Common issues are found to predominate when "liability can be determined on a class-wide basis, even when there are some individualized damages issues." *Id.* at 139. Further, predominance is not to be determined by a mechanical process of classifying issues as either "common" or "individual" and deciding whether one group "outweighs" the other; "but rather, whether the use of the class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." *Friar v. Vanguard Holding Corp.* 78 A.D.2d 83, 96-97, 434 N.Y.S.2d 698, 707 (N.Y. App. Div. 2d Dep't 1980).

### a.   Defendant's Common Deceptive Practice Predominates

Here, Defendant has acted in a common deceptive manner towards all members of the Class by (1) offering, originating and automatically renewing annual prepaid subscriptions to WSJ.com, all of which included both WSJ Online and Barron's Online, during the Class Period, (2) failing to inform Class members that it would launch Barron's Online as a standalone subscription product on January 8, 2006, prior to the expiration of their prepaid annual subscription term; and (3) failing to honor Class members' pre-paid subscriptions by failing to

provide Dual Access for the  duration of the prepaid annual subscription term.

The predominance requirement is readily met where, as here, the defendant's wrongful or deceptive acts involve the use of standardized documents and practices, such as (1) the Dow Jones' use of a standard form Subscriber Agreements for WSJ.com; and (2) Dow Jones has admitted that at all times prior to January 8, 2006, WSJ.com included both WSJ Online and Barron's Online.  *See Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996), and cases cited therein ("cases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action."); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (S.D.N.Y. 2004) (holding "breach of contract cases are routinely certified" where material terms in contracts are substantially similar or the same.); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 513-516 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3d Cir. N.J. 1998) (granting class certification of plaintiffs' claims based on defendant's deceptive sales practices which employed materially uniform materials); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (N.Y. App. Div. 1st Dep't 2001) (court affirmed class certification on claims for breach of contract and violation of NY GBL §349 where "[p]laintiff's allegations of deceptive acts are based on identical written solicitations"); *Kindel v. Kaufman & Board Homes, Inc.*, 67 A.D.2d 938 (N.Y. App. Div. 2d Dep't 1979) (granting class certification for breach of contract where a condominium owner alleged the builder failed to provide part of the product represented in the standard form purchase agreement.).

In *Taylor v. American Bankers Ins. Group,* 267 A.D.2d 178 (N.Y. App. Div. 1st Dep't 1999), the court affirmed class certification for claims of breach of contract and violation of NY GBL §349, the same claims alleged herein. The *Taylor* court held that common issues

19

predominated, given defendants' common course of conduct in making generally deceptive representations about its insurance in standardized written materials:

> the predominant focus of this litigation is defendants' general practice of offering, in prominent print, ostensibly easily available credit insurance coverage, while, at the same time, relegating to small, inconspicuous print the precise terms of the coverage being extended, and then rejecting insurance claims on the ground that the customer had not been paying for the appropriate type of insurance. This general practice, and the question of whether it constitutes a consumer fraud, affects hundreds, if not thousands, of consumers who, responding to offers of the above-described type, enrolled for the credit insurance defendants purported to offer.

*Taylor* at 178.

Class treatment is also appropriate here because Plaintiffs allege the same, uniform deceptive conduct by defendant Dow Jones in offering, originating, and automatically renewing pre-paid annual subscriptions to WSJ.com, each of which included both WSJ Online and Barron's Online, during the Class Period, and failing to provide Dual Access for the duration of the prepaid annual subscription term, absent payment of additional fees mid-subscription. Defendant's common deceptive practice is highlighted by the standard form Subscription Agreements for WSJ.com in effect prior to January 8, 2006, which state that Dow Jones will only charge subscription fees upon origination and renewal, not mid-subscription, and that all fees are non-refundable.

### b.   **Defendant's Uniform Material Omission Predominates**

Defendant also admittedly failed to give notice to WSJ.com subscribers of the launch of Barron's Online as a standalone subscription product at any time prior to January 8, 2006, despite having knowledge about this launch at least as early as April 2005.  Whalen Decl. Exhibit 8, Dow Jones Supplemental Responses and Objections To Plaintiffs' First Set Of Interrogatories, Response and Objections to Interrogatory No. 3. Cases, such as this one,

involving a defendant's common material omissions routinely satisfy the Rule 23(b)(3) predominance requirement. *See In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426-427 (S.D.N.Y. 1986) (granting class certification under Rule 23(a) and (b)(3) where "the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, . . . Essentially, this is a course of conduct case, which as pled satisfies the commonality requirement of Rule 23. . . . even proof of a material variance among the representations will not defeat the class if certain omissions, inferred from their absence in the [sales] literature, were common to all."); *see also*, *In re Coordinated Title Ins. Cases* 2004 NY Slip Op 50171U, 2004 N.Y. Misc. LEXIS 256 at *18 (N.Y. Sup. Ct. 2004) (certifying class for GBL §349 and fraud claims where "failure to notify consumers of the availability of the reduced premium rate can be viewed as a material omission"); *Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 198 (N.Y. App. Div. 1st Dep't 1998) ("where a defendant makes materially misleading omissions, justifying a presumption of reliance, class certification should not be denied.") (internal citations omitted).

### c.   <u>New York Law May Be Applied Class-Wide</u>

Dow Jones' standard form Subscription Agreements for WSJ.com mandate that any litigation arising from such agreements shall be governed by the laws of New York State, and that any such litigation shall be conducted in the courts located in New York State.  ¶ 6; DJ 00001-16, attached as Exhibit 6 to the Whalen Decl..  Moreover, this Court ruled on May 23, 2011 that all members of the putative Class may bring a claim under GBL §349 so the law on both the Class's contract and consumer protection statute claims is uniform.

### 2.   <u>A Class Action Is The Superior Method Of Adjudication</u>

Each of the enumerated factors to be considered in evaluating whether a class action is

the superior method of adjudication weigh in favor of class certification.

Indeed, "[c]lass actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file suit." *Labbate-D'Alauro*, 168 F.R.D. at 458 (E.D.N.Y. 1996) (internal citation omitted); *see also*, *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67 (E.D.N.Y. 2004) (court held consumer class action was superior where the "class action adjudication will avoid duplicative lawsuits with potentially inconsistent results. In addition, 'due to the relatively small size of each individual class member's claim, it is likely that their claims will never be brought to court without use of the class action procedure.'"); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

Here, class resolution of Plaintiffs' claims would serve judicial economy and eliminate the danger of inconsistent judgments that possibly would result from the separate adjudication of individual claims.  Judicial economy and uniformity of decisions will result from class treatment of Plaintiffs' claims.  Concentrating the litigation of the claims in this forum is highly desirable because Defendant is located and has its home office in this jurisdiction, and a substantial part of the events or omissions giving rise to the claims occurred in this jurisdiction.   Given the small size of each Class members' individual claims, the class action provides the superior method of resolution, without which such claims most likely would never be brought.

Unlike many cases, there is no issue here with individual damages.  Further, unlike many cases, the issue of damages does not create individual questions.  In *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* ___U.S.___, 130 S. Ct. 1431 (2010), the U.S. Supreme Court

held that class actions filed in the federal courts may apply statutory remedies permitted by New York statutes. This Court has already held that GBL §349 will apply to all Plaintiffs' and Class members' claims.  GBL §349 provides for statutory damages of at least $50.00 for each class member.   GBL §349(h).  As a result, the fact of injury for all class members, and even the amount of injury, will be common for all Class members' claims against Defendant.

Plaintiffs do not envision any unusual difficulties in managing this action as a class action or noticing the Class.  Similar complex class action litigation has been successfully prosecuted to excellent results without undue management difficulties.  The Class is far more united in interest than divided, and no danger exists that this action "will [be] splinted into individual trials." *Friar*, 78 A.D. at 102, 434 N.Y.S.2d at 710.  Accordingly, economies of time, effort and expense will be achieved by class action status, and one judgment in this case will promote uniformity of decision among persons similarly situated.  Under these circumstances, the use of a class action is the superior method of adjudication.

III.   **Conclusion**

All certification prerequisites of Rule 23(a)(1)-(4) and Rule 23(b)(3) have been satisfied. Accordingly, it is respectively requested that this Court grant Plaintiffs' motion for class certification in its entirety.

Dated: Manhasset, New York
June 15, 2011

Respectfully submitted,

THE LAW OFFICE OF
PAUL C. WHALEN, P.C.

_____/s/_____
Paul C. Whalen (PW-1300)
768 Plandome Road, 301
Manhasset, NY  11030
Telephone: (516) 426-6870
Facsimile:   (212) 658-9685
paul@paulwhalen.com

**LAW OFFICES OF**
**CURTIS V. TRINKO, LLP**

_____/s/_____
Curtis V. Trinko (CT-1838)
Jennifer Traystman (JT 7583)
16 West 46th Street, 7th Floor
New York, NY 10036
Tel. (212) 490-9550
Fax. (212) 986-0158

***Attorneys for Plaintiffs and the Proposed Class***

24