```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
GARY LEBOWITZ, ANDREW NEWMARK,
ALLAN NEWMARK, and BURT FAURE,
Individually and on Behalf of
All Others Similarly Situated,

                Plaintiff,          OPINION

          -against-                 06 Civ. 2198 (MGC)


DOW JONES & COMPANY, INC.

                Defendants.

-----------------------------------X


APPEARANCES:

          GISKAN, SOLOTAROFF & ANDERSON, LLP
          Attorneys for Plaintiffs Gary Lebowitz, Andrew
          Newmark, Allan Newmark, and Burt Faure
          11 Broadway, Suite 2150
          New York, New York 10004

          BY:  Oren S. Giskan, Esq.
               Catherine Elizabeth Anderson, Esq.

          LAW OFFICE OF PAUL C. WHALEN
          Attorneys for Plaintiff Gary Lebowitz
          222 East 34th Street, Suite 1412
          New York, New York 10016

          BY:  Paul C. Whalen, Esq.

          LAW OFFICES OF CURTIS V. TRINKO
          Attorneys for Plaintiffs Andrew Newmark, Allan
          Newmark, and Burt Faure
          16th West 46th Street, 7th Floor
          New York, NY 10026

          BY:  Curtis V. Trinko, Esq.
```

```
GIBSON, DUNN & CRUTCHER
Attorneys for Defendant
200 Park Avenue, 48th Floor
New York, New York 10166

BY:   Randy M. Mastro, Esq.
      Mark Benjamin Holton, Esq.
      Daniel Martin Sullivan, Esq.
```

**Cedarbaum, J.**

Plaintiffs, a putative class of Wall Street Journal Online ("WSJ Online") annual subscribers sue Dow Jones & Company, Inc. for breach of contract and violation of New York General Business Law § 349(a).  The complaint alleges that Dow Jones eliminated prepaid annual subscribers' access to Barron's Online ("BOL") in violation of the subscriber agreement, and that Dow Jones failed to disclose that prepaid subscribers would not retain access to both WSJ Online and BOL for the duration of their subscriptions.  Plaintiffs have moved for class certification.

Dow Jones moves for summary judgment on plaintiffs' claims.  For the reasons that follow, Dow Jones's motion is granted.

## BACKGROUND

The following facts are undisputed, except where specifically noted.

Dow Jones owns and operates WSJ Online.  Before January 8, 2006, online subscribers to WSJ Online had access to the content of both WSJ Online and BOL.  On that date, Dow Jones "spun off" BOL into a separate service.  Existing annual subscribers could choose to convert their subscriptions from WSJ Online to the new, freestanding BOL and lose access to WSJ Online, or they could retain their WSJ Online subscriptions and access BOL for a prorated fee, up to a maximum of $20.  The $20 fee was prorated

based on the remaining time in the customer's subscription.  For example, a customer who subscribed to WSJ Online in February 2005 would be charged a lower amount for continued access to BOL than a customer who subscribed to WSJ Online in December 2005.  Subscribers to BOL after January 8, 2006, were charged a standard annual subscription rate of $79.  Before the spin-off of BOL, Dow Jones had implemented all WSJ Online price increases at the end of each subscriber's term, so that each subscriber would begin to pay the higher fee upon renewal.

From at least early 2004 through January 8, 2006, potential subscribers to WSJ Online were required to accept a "Subscriber Agreement," which provided the terms and conditions of a subscription.  Each version of the Subscriber Agreement used during the proposed class period contained the following language or substantially similar language:

> This Subscriber Agreement governs your use of the Wall Street Journal Online, Barron's Online, and, unless other terms and conditions expressly govern, any other electronic services from the Wall Street Journal Online and Barron's Online that may be made available from time to time (each, a "Service").
>
> . . . .
>
> . . . Subscription fees will be billed at the beginning of your subscription or any renewal. . . .

4

> We may change the fees and charges then in effect, or add new fees or charges, by giving you notice in advance. . . .
>
> . . . .
>
> This Agreement contains the final and entire agreement between us regarding your use of the Services and supersedes all previous and contemporaneous oral and written agreements regarding your use of the Services. We may discontinue or change the Services, or their availability to you, at any time.

WSJ Online Subscriber Agreement, July 31, 2004, Preamble, § 3, § 8; WSJ Online Subscriber Agreement, December 19, 2005, Preamble, § 3, § 9.

Todd Larsen, the President of Consumer Electronic Publishing at Dow Jones during the proposed class period, testified at his deposition that Dow Jones discussed the spin-off of BOL as early as 2003. He further testified, however, that Dow Jones did not make the final decision to proceed with the "cold turkey" scenario -- converting all subscribers at one point in time, rather than converting subscriptions over the course of a year as they expired -- until November 21, 2005. On that date, Larsen sent an email to Richard Zannino, Chief Operating Officer of Dow Jones, and Gordon Crovitz, President of Electronic Publishing, explaining that his team had examined

5

other options and "determined that we will need to proceed with the status quo plan on BOL -- cold turkey." Larsen testified that prior to November 2005, cold turkey had been "the sort of targeted plan, but we were still working through whether it was the best one and whether we were comfortable to go forward with that . . . ." He also declared under penalty of perjury that as the head of the relevant business unit, he was responsible for making this decision to proceed with the spin-off.[1]

Plaintiffs emphasize that Jane Ouano, then an Assistant Director of Marketing, testified at her deposition that the decision to spin off BOL had been made by no later than March or April 2005. However, as a marketing employee, Ouano stated that she did not know who specifically made the decision to spin off BOL. Nor did she testify about the timing of the final decision to proceed with the cold turkey spin-off. Her testimony is consistent with the deposition testimony of Director of Customer Systems and Service Kathleen Collins. Collins testified that

---

[1] Plaintiffs argue that Kelly Leach, then a Director of Planning and Analysis and a subordinate of Larsen, stated that a group of people, including Larsen, was responsible for the final decision. Yet Leach also testified that the final decision to spin off BOL was made in the fourth quarter of 2005. Dow Jones, in its response to an interrogatory, testified that the individuals most knowledgeable about the spin-off included Leach, Larsen, President of Barron's Edward Finn, and General Manager of WSJ Online Gail Griffin. Plaintiffs have not produced any evidence of a final decision made by any individual other than Larsen. Consequently, whether the final decision was made by only Larsen or by Larsen and others is immaterial.

prior to November 2005, a decision had been made that Dow Jones wished to pursue a spin-off, but "specifically how and when and under what implementation[,] the plan was not finalized until November or December of '05 . . . ." Thus, Ouano's testimony creates no genuine dispute as to the timing of the final decision to proceed with the cold turkey spin-off.

The decision-making process concerning the BOL spin-off included an analysis of WSJ Online subscribers' use of BOL from June through August 2005 (the "2005 Usage Study"). According to the 2005 Usage Study, approximately 338,000 WSJ Online credit card subscribers (73%) did not access BOL at all; 117,000 WSJ Online credit card subscribers (25%) accessed both BOL and WSJ Online; and approximately 10,000 WSJ Online credit card subscribers (2%) accessed BOL content exclusively. Of all subscribers, not only credit card subscribers, 79% did not access BOL at all. Plaintiffs object to this evidence as incomplete because Dow Jones could have provided the Court with data on BOL usage for the entire length of class members' subscriptions. Nonetheless, I will consider the study because it was not created for litigation. Dow Jones's prior usage studies in 2002 and 2004 also found that the majority of WSJ Online subscribers did not access the content of BOL.

Both Ouano and Collins declared under penalty of perjury that in December 2005, Dow Jones placed a notice on the WSJ

7

Online and BOL websites informing subscribers of the January 8, 2006 spin-off. According to Collins, a box with the words, "IMPORTANT NOTICE TO READERS" appeared on each homepage. When users clicked the box, a pop-up window appeared containing the notice about the spin-off of BOL. The first paragraph of the notice stated: "Beginning Jan. 8, 2006, we will relaunch Barron's Online as a separate subscription site from The Wall Street Journal Online. A subscription to Barron's Online will no longer automatically include access to the Online Journal, and vice versa."

   Plaintiffs point to one of Dow Jones's interrogatory responses to argue that Dow Jones informed WSJ Online subscribers of the spin-off only on the day that it occurred. In response to a request to "[i]dentify any and all forms of notice used to disseminate your decision to unbundle Barron's Online from the WSJ Online subscription, and vice versa," Dow Jones replied: "Subject to its objections, Dow Jones states that on January 8, 2006, it notified subscribers via email (DJ 00323) and pop-up notice (P000021)." However, the evidence on the timing of the notice is not limited to this response. The evidence shows that Dow Jones gave notice of the spin-off on the WSJ Online and BOL websites in December 2005. Given the pop-up notice's text and the testimony of Ouano and Collins, Dow

8

Jones's response to the interrogatory does not create a genuine dispute of material fact.

## DISCUSSION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**I. Breach of Contract**

Plaintiffs allege that Dow Jones breached the Subscriber Agreement by charging plaintiffs for one-year subscriptions that included access to both WSJ Online and BOL, but then spinning off BOL without notice prior to the expiration of the subscription and charging plaintiffs more to continue to access both services.[2]

To prevail on a breach of contract claim, plaintiffs must establish: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and

---

[2] The Fourth Amended Complaint refers to, in addition to the Subscriber Agreement, various advertisements and solicitations, as well as a confirmation email. In their opposition to summary judgment, however, plaintiffs rely only on the Subscriber Agreement as the operative contract.

(4) damages.  Terwilliger v. Terwilliger, 206 F.3d 240, 245–46 (2d Cir. 2000).

The interpretation of an unambiguous contract is a question of law.  New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 111 (2d Cir. 2006).  On its face, the Subscriber Agreement expressly permits Dow Jones to discontinue or change services (defined to include BOL) or their availability at any time.  Plaintiffs argue that such an interpretation of the contract renders it meaningless because it would eliminate the requirement of consideration or performance on the part of Dow Jones.  Yet it is well-settled that "the courts will not adopt an interpretation that renders a contract illusory when it is clear that the parties intended to be bound thereby."  Horowitz v. N.Y. Blood Ctr., Inc., No. 100382/03, 2003 WL 22287468, at *3 (N.Y. Sup. Ct. Oct. 2, 2003) (citing Blandford Land Clearing Corp. v. Nat'l Union Fire Ins. Co., 260 A.D.2d 86, 94 (1st Dep't 1999)); see also Terwilliger, 206 F.3d at 245 ("Effect and meaning must be given to every term of the contract . . . [it] must be interpreted so as to give effect to, not nullify, its general or primary purpose.") (internal citations omitted).

New York courts have examined the reasonableness of a defendant's behavior before holding a contract to be illusory.  For example, in Horowitz, an inventor plaintiff argued that a contractual provision with a former employer was illusory.  2003

10

WL 22287468, at *3. The contract stated that payments due to the plaintiff "may change from time to time" at the discretion of the president of the non-profit employer. Id. at *1. After the president changed the payment schedule, Horowitz brought suit. The court rejected Horowitz's argument that the contract was illusory because there was no evidence that the president had exercised his discretion in an improper manner, and Horowitz was not left with an insignificant income. Id. at *3. Other courts applying New York law have considered similar provisions without holding them to be illusory. See, e.g., Lee v. Joseph E. Seagram & Sons, Inc., 552 F.2d 447, 454 (2d Cir. 1977) (holding that an oral agreement involving an offer to sell in exchange for an agreement to relocate sellers to an "acceptable" new distributorship was not illusory, as courts would impose an obligation of good faith on the sellers' exercise of discretion in accepting or rejecting the new distributorship); Qwerty Software, Inc. v. McKinsey & Co., No. 601340/02, 2005 WL 2148853, at *2-3 (N.Y. Sup. Ct. July 11, 2005) (dismissing breach of contract claim based on a provision allowing McKinsey to "terminate the Services at any time, for any or no reason," noting that the "clear, unambiguous terms of the Qwerty-McKinsey contract cannot be avoided by claims of misunderstanding, or of uneven bargaining power"); Broder v. Cablevision Systems Corp., 418 F.3d 187, 196-97 (2d Cir. 2005) (interpreting a contractual

11

provision in which a cable company's rates for installation and programming were "subject to change"). In this case, there is no evidence that Dow Jones used the discontinuance provision to deprive plaintiffs of an unreasonably large part of WSJ Online's content, and there is no reason to interpret this provision as permitting such extreme behavior. Dow Jones acted reasonably, and therefore this provision of the Subscriber Agreement is not illusory. Dow Jones discontinued access to BOL content in accordance with the contract.

Plaintiffs also contend that Dow Jones breached the Subscriber Agreement by charging additional fees for access to both WSJ Online and BOL without giving the prepaid subscribers notice in advance. Even if the spin-off of BOL is construed to be a change in fees, as opposed to a change in services, the record shows that Dow Jones provided the December 2005 pop-up notices on the WSJ Online and BOL websites in advance of the January 8, 2006 spin-off. This constituted adequate notice under the contract.

Because plaintiffs' breach of contract claim fails, I do not reach Dow Jones's other arguments concerning the doctrines applicable to individual named plaintiffs.

**II. New York General Business Law § 349(a)**

Plaintiffs also claim that Dow Jones violated New York General Business Law § 349(a) by failing to inform subscribers

12

at the time they prepaid that Dow Jones would spin off BOL and discontinue subscribers' access for the duration of their annual subscription. N.Y. Gen. Bus. Law § 349(a) provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

To succeed on a claim under § 349(a), plaintiffs must prove: (1) that the challenged act or practice was consumer-oriented; (2) that the act or practice was misleading in a material way; and (3) that the plaintiffs suffered injury as a result of the deceptive act. Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). The second element must be shown objectively: "[T]he deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." Id. at 29 (internal citation omitted). A material claim is one that involves information that is important to consumers and likely to affect their choice of a product. Bildstein v. Mastercard Int'l. Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004). Plaintiffs need not establish reliance or intent to defraud or deceive, but they must show that the material deceptive act caused actual harm. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (1995). Claims based on omissions are appropriate "where the business alone possesses

material information that is relevant to the consumer and fails to provide this information." Id.

When the conduct underlying a Gen. Bus. Law § 349(a) claim is provided for in a contract between the parties, New York courts have held such conduct not to be deceptive. See, e.g., Lewis v. Hertz Corp., 181 A.D.2d 493, 494 (1st Dep't 1992) (affirming dismissal of § 349(a) claim against a car rental company for its offered options and fees because the practices were fully disclosed); Citipostal, Inc. v. Unistar Leasing, 283 A.D.2d 916, 918 (4th Dep't 2001) (affirming dismissal of § 349(a) claim in part because "the conduct complained of is specifically provided for by the parties' agreement and thus was fully disclosed"); cf. Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126-27 (2d Cir. 2007) (vacating dismissal of § 349(a) claim because although the fee was disclosed, the fee may have violated another substantive law, which would satisfy the misleading element of § 349(a)). The Subscriber Agreement here disclosed that a discontinuance or change in "Services," defined to include BOL content, could occur. Because Dow Jones's spin-off of BOL was consistent with the contract, plaintiffs fail to satisfy the requirement of material deception.

Furthermore, as discussed above, the record shows that the final decision to proceed with the particular spin-off plan at issue -- the "cold turkey" spin-off -- was not made until

14

November 21, 2005, and Dow Jones provided notice on the WSJ Online and BOL websites in December 2005.  Dow Jones's preliminary discussions are immaterial, as § 349(a) cannot reasonably be interpreted to require Dow Jones to disclose its hypothetical or tentative business plans in this context.  Because Dow Jones provided notice of its decision within a reasonable period of time, plaintiffs are unable to establish that Dow Jones deceived subscribers about its plans for a cold turkey spin-off of BOL.  Thus, plaintiffs cannot show a violation of Gen. Bus. Law § 349(a).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiffs' complaint is dismissed. Accordingly, plaintiffs' motion for class certification must be denied.  The Clerk is directed to close the case.


SO ORDERED.

Dated:   New York, New York
         March 12, 2012


                                     S/_____
                                        MIRIAM GOLDMAN CEDARBAUM
                                        United States District Judge